SEVA`AETASI FAMILY by TAGO
ROBERT SEVA`AETASI, Plaintiff

v.

FANENE TAUVEVE, MULIUFI FANENE, and
FETAIAIGA FANENE, Defendants

TAGO SEVA`AETASI, ASUEGA FA`AMAMATA L. SALANOA
and LOTOA GI TAVAI, Objectors/Plaintiffs

v.

FANENE F. TAOFI KAVA for FANENE
FAMILY, Defendants/Claimants

ROBERT S. TAGO SEVA`AETASI, Objector/Plaintiff

v.

UA TA`ITA`I and EPI TA`ITA`I, Defendants/Claimants

EPI UA TA`ITA`I, ASUEGA F. LAUVAI SALANOA,
FANENE FETAIAIGA TAOFI KAVA, and
IVI K. PENEUTA Plaintiffs/Objectors

v.

ROBERT S. TAGO SEVA`AETASI for
SEVA`AETASI FAMILY, Defendant/Claimant

UIVA TE`O for TE`O FAMILY, Intervenor

High Court of American Samoa
Land & Titles Division

LT No. 25-85
LT No. 33-86
LT No. 31-87
LT No. 32-87

March 23, 1989

Before REES, Associate Justice, TAUANU`U, Chief Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Asuega Family, Charles Ala`ilima
For Fanene Family, Aviata Fa`alevao
For Gi Family, Edwin Gurr and Sala Samiu
For Leota, Aumoeualogo Soli
For Tuaolo Maliuga, Tau`ese P. Sunia
For Seva`aetasi Family, Asaua Fuimaono
For Pulu Talalotu and Family, Aitofele Sunia
For Epi Ua Ta`ita`i, Togiola T.A. Tulafono
For Uiva Te`o, Lutu T. Fuimaono

On Motion for Reconsideration or New Trial:

Asuega moves for reconsideration of our decision allowing registration of certain land by the Fanene family and by the Seva`aetasi family.

Asuega principally contends that the Court erred in declaring the land called "Tuilemuia" to be the land of the Fanene family.

The first ground of error is that the Court failed to give consideration to the fact that Asuega offered a theory of how the land got its name, whereas Fanene offered no such theory. Asuega maintains the true name of the land is "Tu`ulemuia." She says this name commemorates an event that happened during the battle to repel the Tongan invasion hundreds or thousands of years ago. There was a battle at the top of the mountain and the Asuega titleholder at that time was supervising the evacuation of the wounded from the battle ground. As the wounded warrior or warriors were carried down the mountain, Asuega made various remarks at places on the way. Each of these places then acquired the name of what Asuega had said there. When he got to the area presently in dispute, he instructed those carrying the wounded to "put them down softly" (tu`u lemu ia). Hence the name.

Although the Court was most interested in this story of how the land was named, we have no idea

whether it is a true story, much less whether the person who knows the story necessarily owns the land. Histories told and retold over the centuries tend to vary in the telling from family to family; this one might be exactly accurate, or it might be accurate in every detail except that it was a Fanene or a Te`o or a Mauga who gave the orders. We note that counsel for Fanene, in cross-examining Asuega, asked whether she had not heard that Fanene had instructed those fighting the Tongans to "stab them softly" (tui lemu ia) because they were already dead. Although counsel for Asuega may be correct in pointing out that this theory was not put in evidence, its use in cross-examination brought home the point that there were other plausible ways in which the land might have been named.

We note that all non-Asuega witnesses who adverted to the name of this parcel, including those who appeared disinterested as between Fanene and Asuega, called it "Tuilemuia" rather than "Tu`ulemuia." Asuega's own pleadings refer to Tuilemuia, and her objections before the Registrar refer to "Tulemuia." We note also that Asuega's theory would entail the authority of Asuega over various tracts of land further up the mountain. There was no evidence of such authority other than the story itself. Although the ownership of the land further up the mountain is not before us, such evidence as was incidentally presented would suggest that claims of a general Asuega overlordship in this area would be warmly resisted by the Gi, Tuaolo, Poiali`i, and Te`o families, among others.

The main point, however, is that family history is not the sort of evidence that can ordinarily be dispositive of land trials. If this case had turned on which party had the most comprehensive and spellbinding theory about the history of the land, the whole area would have been awarded to Seva`aetasi or Te`o. Instead the Court based its decision primarily on the best evidence of who has occupied the land for the last hundred years or so.

In their pleadings the Asuega and Fanene families agreed that Tuilemuia belonged to only one of them. The two families are connected by marriage, and each family insisted that members of the other family were on the land only because of

this connection.[1] Indeed, at trial both parties agreed that every member of the Asuega family who had been on the land was also a member of the Fanene family and vice versa. The only question for the Court to resolve was whether they were on the land in their capacity as Fanenes or as Asuegas.

After the conclusion of the trial, Asuega submitted an affidavit to the effect that she had been in error on this point. She said that two people who had been on the land, Toali`i and Tiute, were members of the Asuega family but not of the Fanene family. At a brief post-trial hearing, counsel for Fanene did not contest this new evidence. (We were incorrect in our observation that "[o]nly Asuega herself identified the two non-Fanene family members as occupying the area in question.") The Fanene family still maintains, however, that any Asuega family members who were ever on the land were there because of a connection to the Fanene family. By Asuega's own version of this connection, the two people in question were descended from Asuega Aumalaga. Asuega Aumalaga married a Fanene woman, the daughter of Fanene Fogatau. He later took a second wife who was not a Fanene. The two non-Fanenes who were identified as having lived on Tuilemuia were descended from this second marriage.

The presence of these two people on Tuilemuia at some time in the past does not answer the

---

[1] The Fanene/Asuega disagreement was not, in other words, a boundary dispute in which both sides might win a portion of the disputed area. Rather, each party's claim depended on controverting the legitimacy of the other's title. Such controversies can be at least as difficult to resolve as boundary disputes, but are far more likely to end up with clear winners and losers. Counsel for Asuega now argues that even if Fanene prevails with regard to the land within her survey, certain adjoining lands should be awarded to Asuega. This would entail a decision that each of the two families was occupying lands within the Tuilemuia/ Leiliili area in its own right. Whatever its emotional appeal, such a decision would be contrary to the central argument and evidence of both parties.

question before the Court, which is why they came. Asuega says that Fogatau came onto the land because of his son-in-law Asuega Aumalaga; Fanene says Aumalaga came because of his father-in-law Fanene Fogatau. In either case it would not have been inconsistent with Samoan custom for the children of Asuega by his second marriage to remain on the land along with their half-brothers and sisters. Their customary rights and obligations would have differed depending on whether they were blood members or merely connections of the family that owned the land, but as long as relations were friendly and land plentiful it is unlikely that they would have been evicted.

The question for the Court remains whether the people on Tuilemuia have traditionally regarded it as Fanene or Asuega land. We have no evidence of what Tiute and Toali`i thought, but we do know that members of both families who have lived on the land during the last forty years or so have regarded it as Fanene land under the pule of the Fanene titleholder. This was the testimony of Oti, the Fanene/Asuega family member most prominently identified with the land, at trial. It is also the position of Aleki and Muliufi, whose construction on Tuilemuia was the event that gave rise to these consolidated cases. Throughout the course of a long boundary dispute with Tago Seva`aetasi they have consistently relied on the authority of Fanene rather than Asuega, although they are members of both families. (See, e.g., the complaint filed on behalf of Muliufi and other parties in LT No. 1417-74, a previous case on the same subject matter; the answer in LT No. 25-85; and the testimony of Aleki at the hearing on the Order to Show Cause in LT No. 25-85.) It is also the consensus of neighboring landowners unrelated to either party that the people on this land have been Fanene people.

We do not believe we erred, moreover, in taking account of Asuega's testimony that, during a previous case prior to her acquisition of the Asuega title, she urged the Fanene titleholder to file a claim to land in this immediate vicinity but gave no such counsel to the Asuega titleholder. While such an action does not absolutely preclude a later claim by the Asuega family, it does bolster our conclusion that most members of both families have traditionally regarded Tuilemuia as Fanene land.

149

Finally, Asuega urges that her family should be awarded at least those areas that are within the Asuega survey but outside the Fanene survey. One such area is to the east of the Fanene survey, where Asuega stresses the fact that her boundary is a "natural" one, along a gully. (We do not recall whether Fanene was asked at trial to describe her eastern boundary. At the hearing on the order to show cause she testified that it was along a stone wall that had been wrongfully bulldozed by Tago.) The weight of the evidence, however, shows that the area just to the west of the boundary claimed by Asuega belongs to the Seva`aetasi family.

The only other area outside the Fanene survey that was claimed by Asuega is a small strip of land along the southern boundary with Epi and Ua Ta`ita`i, with a total area of perhaps one-tenth of an acre. The Fanene and Epi surveys did not quite meet, and yet witnesses for each of these parties testified to a common boundary with the other. The weight of the evidence was that the mutual boundary was along the line claimed by Epi. To have awarded this tiny strip of land to either of the two parties that included it in their surveys, Seva`aetasi or Asuega, would not only have presented extraordinary opportunities for future discord but would also have been contrary to the evidence.

The motion for reconsideration or new trial is accordingly denied.

It is so ordered.